**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**MARQUIS T. TOWNES**                                                                    **PLAINTIFF**

**V.**                                                                    **NO. 2:10CV078-P-A**

**BILL RASCO, et al.**                                                                    **DEFENDANTS**

## REPORT AND RECOMMENDATION

The undersigned held an evidentiary hearing in this action on September 21, 2011, at

which the plaintiff proceeded *pro se* and the defendants were represented by counsel. All parties

were allowed to call witnesses and offer exhibits. Having heard the testimony of the parties and

witnesses and reviewed exhibits, the undersigned makes the following Report and

Recommendation to the United States District Judge.

### A. Factual Findings

The plaintiff filed this complaint under 42 U.S.C. § 1983, asserting claims for excessive

use of force and failure to protect him when he endured three separate attacks on March 6, 2010.

The remaining defendants at the time of this Report and Recommendation Officer Jacob Green,

Sergeant Mark Griffis, Officer Kevin Armstrong and Sheriff Bill Rasco.

On the morning of March 6th, the plaintiff and one of his cell mates, Oglesby, got into a

verbal altercation. Oglesby accused the plaintiff of taking a banana off of his breakfast tray. The

noise garnered the attention of Officer Armstrong. According to testimony and statements,

Armstrong removed and questioned Oglesby. Officers Griffis and Green came to the cell to

assist and defuse the situation. After some discussion, the officers decided to move the plaintiff

to another cell for stealing Oglesby's breakfast. They instructed the plaintiff to gather his things

because he was being moved to lockdown. All three officers recall the plaintiff using profane

language and verbally protesting the move. Nevertheless, the plaintiff grabbed his personal items

and walked out of the cell toward the stairs. When he reached the stairs, he dropped his

belongings and turned toward Griffis. He was immediately forced against the wall, placed in

restraints and moved to lockdown.  His personal belongings remained where he had dropped them.

The plaintiff alleged in his pleadings and testified at trial that Officer Griffis hit, punched and kicked him during this incident.  According to the plaintiff, Griffis even took off his equipment belt as if to  challenge the plaintiff or encourage a physical showdown between the plaintiff and himself.  That plaintiff testified that he did not receive any medical treatment after this assault.

The second alleged assault occurred shortly after the banana incident while plaintiff was in lockdown.  Admittedly unhappy about his new cell assignment, the plaintiff began beating and kicking the cell door and screaming about his property.  According to Officers Green, Armstrong and Griffis they came to the plaintiff's cell.  When the plaintiff continued beating and kicking the cell door, the officers decided to move the plaintiff to a padded cell for his own protection and to quell the disturbance.  They opened his cell door and instructed plaintiff to face the wall.  The plaintiff continued using profanity and allegedly threatened the officers.[1]  When Armstrong approached the plaintiff, the plaintiff swung at Armstrong with a closed fist, striking him in the neck.[2]  Green administered one burst of OC spray toward the plaintiff's face.  The plaintiff was subdued, restrained and taken to medical for decontamination.[3]

From this encounter, the plaintiff says,  he suffered some swelling about his head.  The defendant officers consistently denied seeing any signs of injury to the plaintiff.  In fact, the plaintiff then was taken to a disciplinary hearing for assaulting Armstrong.  When questioned,

---

[1] There were as many as two other officers involved who are not parties to this litigation.

[2] Photographs of Armstrong's neck were admitted at D2 into evidence.

[3]  Griffis testified that each time an inmate receives medical attention a record of the event is created.  However, even though all the witnesses testified that the plaintiff was taken to medical and allowed to wash the spray off, there was no medical record from March, 6, 2010.

Griffis testified that the plaintiff would not have been taken to a disciplinary hearing with visible injuries.

After the disciplinary hearing, the plaintiff was taken to yet another cell,[4] which was already occupied by inmate Walker. The plaintiff testified that he begged Armstrong not to put him in a cell with inmate Walker. On the stand the plaintiff described a vague history between himself and Walker before they had been incarcerated. The plaintiff also assumed that Walker had stabbed another inmate in previous weeks. Armstrong recalled the plaintiff protesting being placed in the cell but did not recall any specific reason related to Walker. Rather, Armstrong stated that the plaintiff had been difficult all day and had been resistant to every move. It was Armstrong's opinion that plaintiff simply wanted to be the one to decide which cell he occupied.

Once in this third cell, the plaintiff lay on the cold floor trying to recuperate from the effects of the OC spray. While lying on the floor, the plaintiff heard the cell door rattle; two other inmates, Odom and Garrett, entered the cell and along with Walker began beating the plaintiff. The plaintiff was able to get away from his attackers and report the incident to officers. Both the plaintiff and inmate Odom were taken to medical for evaluation. MDOC documents noted that the plaintiff suffered no major visual injuries.[5] Following this attack, the plaintiff was moved for a fourth and final time to H-tank in another part of the facility.

At the evidentiary hearing, the plaintiff called two inmate witnesses to testify on his behalf. Inmate Conwill, who was in H-tank, did not witness any of the day's events, and his only information came from the plaintiff. Conwill explained that he did notice some swelling to the plaintiff's lip and eye. Inmate Wilson was also in H-tank and had no personal knowledge of the events beyond what information he gathered from the plaintiff. Wilson also stated that he

---

[4] The cell where officers released the OC spray could not be used to house any inmate until the spray had dissipated.

[5] Again, despite the testimony, there is no medical report from March 6th evidencing that the plaintiff received any treatment.

noticed abrasions and swelling on the plaintiff's head. In his pleadings and at the hearing, the plaintiff maintained that he also lost a tooth. It was not clear if or when or during which scuffle he allegedly lost the tooth. Furthermore, no one else noticed or was aware of the injury.

There was very little testimony relating to defendant Sheriff Rasco. The plaintiff essentially acknowledged that he had named Rasco as a defendant because he is in charge of the prison. The plaintiff stated that he had sent several grievances to Rasco with no response. Rasco testified that he was unaware of any particular problem with the plaintiff and denied ever receiving any letters. It is clear that Rasco had no personal involvement in the facts giving rise to this litigation. The court also heard testimony from Lent Rice who is in charge of internal investigations at the jail. Both Mr. Rice and Rasco explained the grievance procedure. Mr. Rice testified that he had seen some of the plaintiff's written grievances but denied there had been any breach of policy or procedure.

### B. Excessive use of Force

When reviewing an excessive force claim, courts must balance the constitutional rights of prisoners with the needs of officials to use force to maintain order. *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). To establish liability on the part of defendants, the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." S*ee Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Not every malevolent touch gives rise to a constitutional claim of excessive force; in fact, the Eighth Amendment prohibition against "'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (citations omitted). A *de minimis* use of force, however, is insufficient to state a cognizable Eighth Amendment claim. *Jackson v. Culbertson*, 984 F.2d

699, 700 (5th Cir. 1993).  A single incident of force or a single blow is *de minimis* and thus does not violate the Eighth Amendment.  *Id. at* 700.

## 1. The Breakfast Incident

The first alleged use of excessive force occurred following the missing banana controversy.  The plaintiff maintains that Officer Griffis punched, kicked and as much as challenged him to a physical confrontation.  Other than the plaintiff's own testimony, nothing corroborates any use of force by Griffis on this occasion.  To the contrary, Officer Green testified that when the plaintiff dropped his personal belongings and turned directing himself towards Griffis, Casey was actually the one who placed the handcuffs on the plaintiff.  No defendant recalled any use of force by Griffis.  All the defendants, however, consistently testified that the plaintiff was disruptive, unruly and uncooperative, which required that they use restraints in order to restore control.

As to the breakfast incident the undersigned finds that after the verbal altercation between the plaintiff and his cell mate, the officers decided to move the plaintiff.  The plaintiff, who admitted he "might have said a few things," was unhappy about being moved.  When he resisted the move by dropping his belongings and turning as if to walk toward Griffis, he was restrained.  There is no record the plaintiff received medical treatment and nothing to indicate that medical treatment was required.  The use of force to restrain the plaintiff on this occasion was not excessive.

## 2. The Lockdown Incident

After being moved involuntarily and without his things, the plaintiff continued to display his resentment by kicking the cell door, yelling, using profanity and generally being disruptive.  Officers Armstrong, Green and Griffis returned to the plaintiff's cell.  The plaintiff refused to obey the guards' commands and stop the commotion.  The officers decided to move the plaintiff

for a second time, this time to a padded cell where he would not be able to injure himself.[6]  The cell door was opened and the plaintiff was ordered to face the wall.  He refused and spouted off more profanity.[7]  Officer Armstrong approached the plaintiff.  The plaintiff swung at Officer Armstrong striking him in the neck.[8]  Officer Green administered a burst of OC spray and all three Officers take the still combative plaintiff to the floor and struggle to place him in restraints.  Two more officers arrived to assist.  Once restrained, the plaintiff was taken to medical for decontamination.[9]  Immediately following the incident, the plaintiff was taken to a disciplinary hearing for assaulting Officer Armstrong.

The force used in this incident was not used sadistically or designed to cause harm.  Instead, the force applied by the officers was entirely appropriate and used in a good faith effort to gain control of a defiant and possibly violent inmate.  Additionally, it is entirely likely that the plaintiff suffered some bruising or abrasions while struggling with three to five guards.  But none were so serious as to prevent him from being taken to a disciplinary hearing, nor obvious enough to warrant notation by medical staff.  In short, the use of force was not excessive under the circumstances.

### C. Failure to Protect

"The Eighth Amendment affords prisoners protection against injury at the hands of other inmates" *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted).  The Fifth Circuit has stated that "the 'deliberate indifference' standard [is] the proper standard to apply in

---

[6]  Under examination by the defense, the plaintiff was questioned about an early attempt to harm himself.  Exhibit No. D14 is an incident report relating to that event.

[7]  Officer Green testified that plaintiff threatened to kill him and his children with a "30.06 gun."  The plaintiff denied making the threat.

[8]  Exhibit No. 2 consists of 5 photographs depicting a red abrasion on Armstrong's neck.

[9]  Again, there is no record showing that the plaintiff received any medical treatment on March 6th.  Each witness, however, including the plaintiff agreed that he was allowed to wash the OC spray off.

the context of convicted prisoners who claim[] denial of medical care or the failure to protect." *Grabowski v. Jackson County Public Defenders Office*, 47 F.3d 1386, 1396 (5th Cir. 1995). This standard is not met "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994).

A *pro se* prisoner plaintiff in a case filed under 42 U.S.C. § 1983 must allege more than *de minimis* physical injury to state a claim for physical or emotional damages – regardless of the nature of the claim. *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e). That is, the injury must be more than *de minimis*, but need not be significant. *Hudson*, 503 U.S. at 7; *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (a sore, bruised ear lasting for three days was *de minimis*).

THE INMATE ATTACK

Following the disciplinary hearing, the officers moved plaintiff a third time to a different cell. This time Officer Armstrong placed him in a cell already occupied by inmate Walker. Again the plaintiff protested his move. The plaintiff claims that he begged Armstrong not to put him in the cell with Walker. Armstrong did not recall that plaintiff expressed any concern specific to Walker. After he had been placed in the cell, the plaintiff was attacked by Walker and two other inmates. The plaintiff contends that Armstrong failed to protect him from the attack.

As noted above, the plaintiff provided some vague pre-incarceration history between himself and Walker, none of which revealed any particular animosity or physical altercations. The plaintiff essentially stated that he was aware Walker was a gang member. In any event, Armstrong had no knowledge of plaintiff's innocuous history with Walker.

The plaintiff also assumed, perhaps incorrectly, that Walker had stabbed another inmate. Armstrong testified that he had no knowledge that Walker posed a risk nor did he recall any incident where Walker stabbed another inmate. Armstrong testified that he believes that the

plaintiff had been misinformed about a prior stabbing not involving Walker and disclaimed any knowledge of a grievance between the plaintiff and Walker. Rather, he recalled that the plaintiff had protested and resisted each move that day, and he had no specific reason to conclude the plaintiff's safety would be compromised.

Officer Griffis's recollection was consistent with Armstrong's. He was unaware of any grudge between the plaintiff and Walker. Griffis explained that the plaintiff was placed in the cell with Walker because his previous cell was being decontaminated from the OC spray, and Walker's cell was the only one available.

Based on these facts, the undersigned is unable to conclude that the defendants failed to protect the plaintiff. The officers' testimony was credible, particularly in light of the plaintiff's inability to establish prior knowledge of any particular risk to his safety. As a result, plaintiff has not shown that the defendants were deliberately indifferent to his safety.

In addition, the plaintiff's resulting injuries can best be described as *de minimis*. Both Conwill and Wilson saw the plaintiff following this attack, and each noticed only minor abrasions and some swelling about the plaintiff's head. Such injuries are generally considered insufficient to warrant § 1983 relief. *See Early v. Dretke*, 177 Fed. Appx. 440, 2006 WL 1096707 at *1 (5th Cir. Apr. 26, 2006) (swollen fingers were insufficient to state a claim); *Myles v. Lynaugh*, 56 F.3d 1385, 1995 WL 337728 at **3-4 (5th Cir. 1995) (pain, minor bruising and swelling do not satisfy the injury requirement).

### D. *Respondeat Superior*

As noted above, the plaintiff essentially admitted that he had sued the Sheriff Rasco based upon his supervisory capacity. It is well settled that the a state actor cannot be liable absent any personal involvement in the events which gave rise to the civil action. *Sanders-Burns v. City of Plano*, 578 F.3d 279, 290 (5th Cir. 2009) (the doctrine of respondeat superior is not cognizable in § 1983 actions). It is clear that Rasco had no involvement or direct causal connection to the

plaintiff's claims. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). The undersigned therefore recommends that the court grant judgment in favor of Sheriff Rasco.

### E. Conclusion

It is the recommendation of the undersigned that judgment be entered in favor of all defendants and that the plaintiff's claims be dismissed.

If a party wishes to file objections to these findings and recommendations the appropriate procedures for filing objections to are found in 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b) and Local Uniform Civil Rule 72(a)(3). Objections must be in writing and must be filed within fourteen (14) days of this date, and "a party's failure to file written objections to the findings, conclusions, and recommendation in a magistrate judge's report and recommendation within [14] days after being served with a copy will bar that party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted); *see also United States v. Carrillo-Morales*, 27 F.3d 1054, 1061-62 (5th Cir. 1994), *cert. denied*, 513 U.S. 1178, 115 S.Ct. 1163, 130 L. Ed. 1119 (1995).

The plaintiff must acknowledge receipt of this report and recommendation by signing the enclosed acknowledgment form and returning it to the clerk of the court within fourteen (14) days of this date. *Failure to comply with the requirements of this paragraph may lead to dismissal of this lawsuit under Fed. R. Civ. P. 41(b) for failure to prosecute the claim and for failure to comply with an order of the court.*

This the 2nd day of November, 2011.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE